**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| In re: | **Chapter 11** |
| **PIER 1 IMPORTS, INC.,** *et al.*, | **Case No. 20-30805-KRH** |
| Debtors. | **Jointly Administered** |

## <u>MEMORANDUM OPINION</u>

This matter came before the Court upon the *Debtors' Emergency Motion for Entry of an Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payment, and (III) Granting Related Relief* [ECF No. 438] (the "Motion") filed by Pier 1 Imports, Inc. and its affiliated debtors (collectively, the "Debtors"). The Court had previously approved the Motion by its *Order Granting (I) Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments, and (III) Granting Related Relief* [Docket No. 493] (the "Original Order"). After holding a subsequent hearing on the Motion as required by the Original Order, the Court entered the *First Supplemental Order Granting (I) Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments, and (III) Granting Related Relief* [Docket No. 629] (the "Supplemental Order") on May 5, 2020, thereby extending the relief provided by the Original Order, subject to certain modifications more fully detailed therein, through the earlier of (a) the date that the Debtors file a notice of their intent to reopen operations at some or all of their stores (in which case the Limited Operation Period will continue with respect to any stores that remain closed) (b) May 31, 2020, or (c) such date as the Court orders otherwise (such period, the "Limited Operation Period").

The Court issues this Memorandum Opinion in support of the Supplemental Order. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to

Bankruptcy Rule 7052.[1]   The Court has subject-matter jurisdiction over these jointly administered bankruptcy cases (the "Bankruptcy Cases") pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(A) and (O).  Venue is appropriate pursuant to 28 U.S.C. § 1409.

As the Debtors aptly stated in their Motion, "[t]he world has changed since the filing of these chapter 11 cases."  Mot. ¶ 1, ECF No. 438 at 2.  The Debtors filed their voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on February 17, 2020 (the "Petition Date"), ECF No. 1, with an agreed plan to either effectuate a sale or equitize term loan indebtedness on a stand-alone basis, Riesbeck Decl. ¶ 4, ECF No. 30 at 4.  The Debtors expected to confirm their plan within sixty-six days from the Petition Date.  *Id.*

On the Petition Date, the Debtors foresaw "potential disruptions from the COVID-19 virus (commonly referred to as Coronavirus) currently facing China and other parts of the world," but those disruptions were seen as temporary impacts on inventory shipped from China. *Id*. ¶ 45, ECF No. 30 at 22 ("While factories are beginning to reopen in China, this will likely have some effect on inventory levels for the foreseeable future.").  These forecasted limited supply disruptions were nothing compared to what the next few months would bring.  No constituency in these cases predicted that the world would effectively grind to a halt.

But, so it did.  In the weeks and months that followed the Petition Date, this country has shuttered under mandatory stay-at-home orders and mandatory closures of "nonessential" retail

---

[1]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

businesses, like the Debtors.[2]  As of March 31, 2020, "[a]t least 33 states, 89 counties, 29 cities,

the District of Columbia, and Puerto Rico [had] issued 'stay at home' or 'shelter' in place'

orders" effectively closing the Debtors' stores.  Mot. ¶ 12, ECF No. 438 at 12.  With their stores

shuttered, revenue dried up overnight.[3]  "[T]he Debtors' in-store sales compared to the prior year

fell approximately 65% for the go-forward stores and approximately 55% for the closing stores

during the week ending March 21."  *Id.*  Thus, the Debtors in the Bankruptcy Cases at bar, like

other Chapter 11 debtors throughout the nation,[4] sought to find a way for their businesses to

"shelter in place" for a short duration while they determined whether and how best to maximize

value for their creditor constituents in light of a global pandemic.  The Debtors took "actions to

preserve liquidity, including furloughing employees, closing stores, decreasing salaries, and

reaching out to every landlord to negotiate a consensual rent deferral."  Mot. ¶ 3, ECF No. 438 at

3.  But the Debtors found they needed additional relief from the Court to reduce outgoing

expenses even further and to preserve the status quo during the pandemic crisis through

Court-imposed efficiencies and order.[5]

---

[2]     On March 11, 2020, the World Health Organization characterized the COVID-19 outbreak as a pandemic.  On March 13, 2020, the President of the United States declared a national emergency as a result of the COVID-19 outbreak.  To combat the spread of COVID-19, public health officials urged all people to stay at home and to practice "social distancing" when engaging in essential tasks.

[3]     Despite the Debtors' stores being closed, the Debtors' e-commerce business remains strong, trending close to the business plan.  Mot. ¶ 13, ECF No. 438 a 7.  Certain of the distribution centers supporting the e-commerce business are still operating, consistent with applicable law.  *Id.*

[4]     *See, e.g.,* Debtors' Verified Application in Support of Emergency Motion for Entry of an Order Temporarily Suspending Their Chapter 11 Cases Pursuant to 11 U.S.C. §§ 105 and 305, *In re Modell's Sporting Goods, Inc.*, Case No. 20-14179 (VFP) (Bankr. D.N.J., Mar. 23, 2020), ECF No. 115; Motion of Debtors for Entry of an Order (I) Establishing Temporary Procedures and (II) Granting Related Relief, *In re CraftWorks Parent, LLC*, Case No. 20-10475 (BLS) (Bankr. D. Del. Mar. 20, 2020), ECF No. 174.

[5]     Without an organized, court-supervised bankruptcy process, a potentially destructive creditor grab race would occur because each creditor would pursue its own perceived self-interest in order to protect itself from being left without recourse to assets on the mere hope that the creditors would agree to act collectively.  This dilemma of coordination presents the classic "collective action problem."

To that end, the Debtors filed the Motion.  By the terms of the Motion, the Debtors

proposed limited business operations for a short period of time, including paying only "critical

expenses," meaning only those payments included on an interim budget attached to the Motion.

That budget was further modified following the hearing as reflected in the attachments to the

Supplemental Order (collectively, the "Interim Budget").  Notably, the Interim Budget does not

contemplate rent payments to all landlords during the Limited Operations Period.  Rather, in the

exercise of the Debtors' business judgment, certain landlords would receive rent payments,

which may vary from the normal contractual terms.  The Debtors would also continue to pay

> insurance and utilities necessary to maintain the Debtors' leased
> premises to the extent the Debtors directly pay such insurance and
> utility costs to the insurers and utility providers in the ordinary
> course of business, as well as all monitored security systems to the
> extent such systems are in place in the ordinary course of business.

Suppl. Order ¶ 2, ECF No. 629 at 3.  Thus, pursuant to the terms of the Supplemental Order,

certain landlords will not be paid rent pursuant to the terms of their leases through the Limited

Operations Period.

Numerous landlords (collectively, the "Lessors") objected to the relief sought in the

Motion.[6]  For the reasons stated herein, each of the substantive objections raised by the Lessors

---

> [A]t its core, bankruptcy serves creditors as a group when it supplants individual
> creditor debt collection remedies with a collective debt-collection
> device. . . . [B]ankruptcy's collectivized proceeding is superior to individual
> creditor actions because individual creditors have perverse incentives to act in
> their own interests, even if those interests disserve the creditors' collective
> interest.

Barry E. Adler, *The Creditors' Bargain Revisited*, 166 U. Pa. L. Rev. 1853, 1855 (2018).

[6]    The following objections were lodged in response to the Debtors' request for continued relief at the subsequent
hearing on the Motion:  *Request of KRG Cedar Hill Plaza, LP; KRG New Hill Place I, LLC; KRG Indian River,
LLC; and KRG Port St. Lucie Landing, LLC for Adequate Protection and Joinder in Landlord Objections to
Continuing Relief Requested Pursuant to the Debtors' Emergency Motion for Entry of an Order (I) Approving
Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for
Payments, and (III) Granting Related Relief*, ECF No. 565; *Application to Modify and Objection of NC-White
Oak Main Shopping Center, LLC, Lynchburg (Wards Crossing), LLC, IRC Baytowne Square, L.L.C., IRC*

*Ravinia Plaza, L.L.C., IRC Rivertree Court, L.L.C., IRC University Crossings, L.L.C., Cole MT West Covina CA, LP, SunCor Development Company, LLC, Ramco Spring Meadows LLC, and RLV Winchester Center LP to (A) Debtors' Emergency Motion for Entry of an Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments, and (III) Granting Related Relief and (B) Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments, and (III) Granting Related Relief, ECF No. 567; Objection to Debtors' Emergency Motion for Entry of an Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments, and (III) Granting Related Relief and Request to Continue Limited Operations Period Through May 31, 2020, ECF No. 568; Limited Objection of 5670 Savannah LLC, Acadia Realty Limited Partnership, ARC RGHCHRNC001, LLC, Brixmor Operating Partnership LP, C.E. John Company, Inc., Centercal Properties, LLC, DDR Deer Park Town Center, LLC, Deutsche Asset & Wealth Management, Durango Mall LLC, EDENS, Federal Realty Investment Trust, Heitman LLC, New Market Properties, LLC, Northington Hamden Investors, LLC, PGIM Real Estate, Retail Properties of America, Inc., Service Properties Trust, ShopOne Centers REIT, Inc., Spirit Realty Capital, Inc., ST Mall Owner, LLC, Starwood Retail Partners, LLC, UBS Realty Investors, LLC, Urban Edge Properties, L.P., and Weitzman to Debtors' Emergency Motion for Entry of an Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments, and (III) Granting Related Relief, ECF No. 569; Limited Objection and Response to (A) The Extension of the Relief Granted by the Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments, and (III) Granting Related Relief, and (B) For Adequate Protection Under Sections 363(e) and 361 of the Bankruptcy Code, ECF No. 570; Limited Objection and Joinder of EQYInvest Owner I, Ltd, LLP to Objections to Continuing Relief from Debtors Emergency Motion for Entry of an Order (Docket Entry # 493) (I) Approving Relief Relating to the Interim Budget (II) Temporarily Adjourning Certain Motions and Applications for Payments and (III) Granting Related Relief, ECF No. 577; Limited Objection, Joinder, Reservation of Rights Of JBGR/Stanford Frederick, L.L.C. and Frankel Market Square LLC to (A) To the Extension of the Relief Granted by the Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments, and (III) Granting Related Relief, and (B) For Adequate Protection Under Sections 363(e) and 361 of the Bankruptcy Code, ECF No. 579; Objection of AVR CPC Associates, LLC, Milrock, Inc., and S.A. Development Company L.P. to the Continuing Relief Requested Pursuant to the Debtors' Emergency Motion for Entry of an Order (I) Approving Relief Related To The Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments and (III) Granting Related Relief, and Joinder in Landlord Objections and Requests for Adequate Protection, ECF No. 580; Joinder by Mcallen-83-Mccoll, Inc. to Certain Objections to Debtors' Emergency Motion for Entry of an Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments, and (III) Granting Related Relief, ECF No. 581; Concurrence and Joinder of Lormax Stern Fairplain, LLC to Various Landlords' (1) Objections to (A) Debtors' Emergency Motion for Entry of Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments, and (III) Granting Related Relief and (B) Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments, and (III) Granting Related Relief, and (2) Requests for Adequate Protection Payments, ECF No. 582; Joinder by Washington Prime Group Inc. to the Objections of Certain Landlords to the Relief Requested in the Debtors' Emergency Motion for Entry of an Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments and (III) Granting Related Relief, ECF No. 583; Continental's Objection to Debtors' (A) Emergency Motion for Entry of an Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments, and (III) Granting Related Relief and (B) Request in Status Update to Continue Limited Operations Period Through May 31, 2020 and Request for Adequate Protection, ECF No. 584; Objection of C&B Realty #2 LLC to the Continuing Relief Requested Pursuant to the Debtors' Emergency Motion for Entry of an Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments and (III) Granting Related Relief, and Joinder in Landlord Objections and Requests for Adequate Protection, ECF No. 586; Joinder by G&I IX Valley Bend Property LLC to Objections to Debtors' Emergency Motion for Entry of an Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments, and (III) Granting Related Relief, ECF No. 587; Joinder Heidi Real Estate, LLC to Certain Objections to Debtors' Emergency Motion for Entry of an Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and*

5

fails. As such, the Court found that entry of the Supplemental Order was just and proper under the circumstances and granted the Motion on a further basis through the end of the Limited Operations Period. On May 29, 2020, the Court will consider any request to extend the Limited Operations Period beyond May 31, 2020 and any timely objections filed thereto. In the absence of further extension granted by the Court at the May 29 hearing, the relief provided by the Supplemental Order will expire no later than May 31, 2020.

It is important as a preliminary matter to note the exact relief sought by the Motion. The Debtors did not request that this Court abolish their obligation to pay rent. Rent will still accrue under the terms of the applicable lease as the same may be or has been modified by agreement of the parties. Rather, by their Motion, the Debtors sought only to delay the payment of certain accrued but unpaid rent obligations during the Limited Operations Period.

By granting the Motion, the Court made no determination as to the amount of rent that may be due from the Debtors under any applicable lease. The Court made no determination as to whether the government-mandated closures constitute a taking sufficient to merit the non-payment of rent. The Court also did not decide whether the Debtors' performance under the applicable lease has been excused due to impossibility, impracticability, or frustration of

---

*Applications for Payments, and (III) Granting Related Relief*, ECF No. 589; *Kimco Landlords (I) Joinder in Objections Filed by Other Landlords to the Debtors' Emergency Motion and (II) Reservation of Rights*, ECF No. 591; *Request of Vestar DRM-Opco, LLC, Vestar Alderwood Parkway, LLC, Green Oak Phase II Owner, LLC, and Agree Limited Partnership for Adequate Protection and Joinder in Landlord Objections to Continuing Relief Requested Pursuant to the Debtors' Emergency Motion for Entry of an Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments, and (III) Granting Related Relief*, ECF No. 594; *Joinder of Charles River Bellingham II LLC and Bradley Fair Properties LLC to the Objections of Other Landlords to Debtors' Request to Extend Relief Provided Under Debtors' Emergency Motion Through May 31, 2020 and Reservation of Rights*, ECF No. 595; *Limited Objection and Joinder of Ridgeland Venture, LLC to Objections to Debtors' Motion for Entry of an Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments, and (III) Granting Related Relief and (B) Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payments, and (III) Granting Related Relief*, ECF No. 596; *Commerce Limited Partnership #9305's Joinder in Objections to and Reservation of Rights in the Extension of the Relief Afforded the Debtors in the Order Dated April 6, 2020 (ECF #493), Which Granted the Debtors' Emergency Motion (ECF #436)*, ECF No. 597.

purpose.  Those issues were not before the Court and all parties' rights and defenses in connection therewith are stayed.

The Court also did not find that the Debtors do not have to pay rent.  The obligation to pay rent accrues in accordance with the terms of the applicable lease and state law.  By granting the Motion, the Court only determined that the Debtors may defer such rent obligations as they accrue through the Limited Operations Period to be paid at a later date.[7]

Section 365(d)(3) of the Bankruptcy Code provides that a debtor-in-possession "shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3).  As such, by the plain meaning of the statute, the Debtors must continue to "timely perform all the[ir] obligations" "under any unexpired lease of nonresidential real property."  *Id.*  As this Court previously explained in *In re Circuit City Stores, Inc.*, the "obligation to 'timely' perform that is referenced in § 365(d)(3) refers to the time for

---

[7]    The Court recognizes the extraordinary nature of the relief it was asked to provide here.  Section 105 of the Bankruptcy Code gives the bankruptcy court the broad equitable powers to do just that.  *Davis v. Davis* (*In re Davis*), 170 F.3d 475, 492 (5th Cir. 1999) (citing 2 Lawrence P. King, *Collier on Bankruptcy* § 105.01, at 105–3 (1996) ("The basic purpose of § 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction.").  The relief that the Supplemental Order affords is entirely consistent with section 105's broad grant of equitable powers.  For the reasons stated herein *infra*, entry of the Supplemental Order will not override any explicit mandate to the contrary set forth in the Bankruptcy Code.  *See e.g.*, *Law v. Siegel*, 571 U.S. 415, 421 (2014).  Deferring rental payments during an unprecedented financial crisis in order to provide a post-Petition Date "breathing spell" for the Debtors is not inconsistent with similar relief the bankruptcy process otherwise provides for pre-Petition Date obligations.  *See, e.g.*, *In re Banks*, 577 B.R. 659, 664–65 (Bankr. E.D. Va. 2017) (quoting *Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289, 292 (4th Cir. 1986)) (noting that the automatic stay provides the debtor with a "breathing spell" from its creditors).  While the automatic stay applies to pre-petition actions, Congress adopted section 105 explicitly to permit courts during extraordinary times such as these to extend (not contradict) the principles of the Bankruptcy Code to afford the relief that is "necessary or appropriate to carry out the provisions of [title 11]."  *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.").

performance under the lease terms."    447 B.R. 475, 510 (Bankr. E.D. Va. 2009).    Thus, the

Debtors have an obligation to pay rent in accordance with the terms of the underlying leases.

By the Motion and the Supplemental Order, the Debtors sought to delay payment not in

compliance with the terms of the underlying leases.    Without more, it would seem that such relief

would be in express contradiction of section 365(d)(3) of the Bankruptcy Code.    However, as

explained previously by this Court in *Circuit City*,

> Section 365(d)(3) does not provide a separate remedy to effect
> payment. If a debtor fails to perform its obligations under
> § 365(d)(3), all a Lessor has is an administrative expense claim
> under § 365(d)(3), not a claim entitled to superpriority.

*Id.* at 511 (citing *In re Va. Packaging Supply Co., Inc.*, 122 B.R. 491, 494 (Bankr. E.D. Va.

1990)).    Thus, section 365(d)(3) does not give the Lessors a right to compel payment from the

Debtors in accordance with the terms of the underlying leases.    Rather, to the extent that the

Debtors are obligated to pay rent and fail to timely pay such rent, the Lessors are entitled to an

administrative expense claim.    Administrative expense claims under sections 507(a)(2) and

503(b) of the Bankruptcy Code, such as post-petition date unpaid rent, must be paid "on the

effective date of [a] plan . . . [in] cash equal to the allowed amount of such claim.    11 U.S.C.

§ 1129(a)(9)(A); *see also In re Circuit City Stores, Inc.*, 447 B.R. at 511.    As such, any allowed

claims for accrued but unpaid post-Petition Date rent must be paid by the Debtors on the

effective date of any plan confirmed in these Bankruptcy Cases.    To compel payment by the

Debtors now would be to elevate payment of rent to the Lessors to superpriority status, i.e., a

claim that would be paid before all other accrued but unpaid administrative expense claims.    The

Lessors are not entitled to such relief.

However, the Lessors may be entitled to adequate protection pursuant to sections 361 and

363 of the Bankruptcy Code.    Under section 363(e) of the Bankruptcy Code, "at any time, on

request of an entity that has an interest in property . . . leased . . . by the trustee, the court . . . shall prohibit or condition such . . . lease as is necessary to provide adequate protection of such interest."[8]   11 U.S.C. § 363(e).   When adequate protection is required, a debtor-in-possession may provide such adequate protection by:

> (1)    requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2)    providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3)    granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.   As defined by the statute, "adequate protection" is designed to compensate a non-debtor to the extent any proposed lease "results in a decrease in the value of such entity's interest in such property."   *Id.* § 361(1), (2).

The Debtors' deferred payment of rent while they continue use of the leased premises, does not decrease the value of any Lessor's interest in the property.   All insurance payments, security obligations, utility payments, and other similar obligations of the Debtors typically made in the ordinary course of business are continuing to be made by the Debtors.   If the Debtors are able to reopen stores on June 1, the Debtors have represented that they will be able to make "catch-up rent payments in the middle of July."   Reply Supp. Mot. ¶ 4 & n.6, ECF No. 590 at 3.

---

[8]    A debtor-in-possession has the rights, powers and duties of a bankruptcy trustee.  11 U.S.C. § 1107(a).

The Court found that, to the extent adequate protection is required, the continued payment of the related non-rent payments and assurance of cure payment in July is sufficient to protect the Lessors against any perceived diminution in value.

COVD-19 presents a temporary, unforeseen, and unforeseeable glitch in the administration of the Debtors' Bankruptcy Cases. Absent further relief from this Court, the Limited Operations Period will expire no later than May 31, 2020. The Debtors have announced their plans to not only resume payment of ongoing rent obligations but to cure unpaid post-Petition Date obligations sooner than required by section 1129 of the Bankruptcy Code. Thus, the relief afforded by the Supplemental Order serves to pause the case in order to allow the Debtors an opportunity to make these Bankruptcy Cases succeed for the benefit of all creditors, including the Lessors.

There is no feasible alternative to the relief sought in the Motion. The Debtors cannot operate as a going concern and produce the revenue necessary to pay rent because they have been ordered to close their business. The Debtors cannot effectively liquidate the inventory while their stores remain closed. Unless and until the "stay at home" and "shelter in place" orders are relaxed, the Debtors are unable to open their stores to conduct the sales and customers are unable to come to the stores to buy the inventory marketed for sale.[9] Any liquidation efforts would be ineffective and potentially squander assets that could otherwise be administered for the benefit of all creditors in this case.

---

[9]    While landlords may be able to take advantage of the funding recently made available under the Coronavirus Economic Stabilization Act of 2020 (the "CARES Act"), the Debtors are unable to obtain such funding due to certain eligibility and solvency requirements associated with receiving funding under the CARES Act promulgated by the Small Business Administration. *Roman Catholic Church of the Archdiocese of Santa Fe v. U.S. Small Bus. Admin.* (*In re Roman Catholic Church of Archdiocese of Santa Fe*), No. 18-13027 T11, 2020 WL 2096113, at *4, 2020 Bankr. LEXIS 1211, at *8 (Bankr. D.N.M. May 1, 2020); *see also Penobscot Valley Hosp. v. Carranza*, (*In re Penobscot Valley Hosp.*), No. 19-10034, 2020 WL 2201943, at *3-4, 2020 Bankr. LEXIS 1213, at *7-11 (Bankr. D. Me. May 1, 2020).

The Lessors are not the only creditors in this case, although they are the only creditors objecting to the Motion. The DIP Lenders[10] are estimated to advance an additional $26 million for May. Reply Supp. Mot. ¶¶ 2-3, ECF No. 590 at 2-3. On the Petition Date, the Debtors had approximately 17,000 employees. By March 24, the Debtors furloughed 9,400 of these employees.[11] Pay for the employees who remain has been cut by 20 to 50 percent. Mot. ¶ 15, ECF No. 438 at 8. The Debtors have delayed payment to vendors and suppliers for products and services deemed non-essential. *Id.* ¶ 21, ECF No. 438 at 10.

The unfortunate reality of the situation is that the Debtors have scarce resources currently available to them. The Motion, the Original Order, and the Supplemental Order present a short-term allocation of those scarce resources to meet immediate needs and preserve the value of the Debtors' estates for all creditor constituencies.[12] The severe cost reduction measures implemented by the Debtors allow them the best possible chance of effectuating a value-maximizing sale for the benefit of all creditors. The Lessors are merely one group among many

---

[10]    The term "DIP Lenders" refers to certain of the Debtors' pre-Petition Date lenders that provided a "senior secured asset-based credit facility financing on a superpriority basis . . . in the aggregate principal amount of up to $256 million" to fund post-Petition Date business operations and administration of these Bankruptcy Cases in accordance with an agreed-upon budget, Debtors' Mot. Entry Interim & Final Orders (I) Authorizing Debtors Obtain Postpetition Fin., (II) Authorizing Debtors Use Cash Collateral, (III) Granting Liens & Providing Superpriority Admin. Expense Status, (IV) Granting Adequate Prot. Prepetition Secured Parties, (V) Modifying Automatic Stay, (VI) Scheduling Final Hr'g, & (VII) Granting Related Relief ¶ 14, ECF No. 25 at 6, which facility included a refinance and/or rollup of various pre-Petition Date obligations owed to the DIP Lenders, Riesbeck Decl. ¶ 59, ECF No. 30 at 27-28. In light of the Debtors' extremely limited ability to generate revenue, the DIP Lenders are functionally funding the Limited Operations Period. Hr'g Tr. 5:6-12; 6:22-7:9, Apr. 28, 2020, ECF No. 610.

[11]    Furloughed employees still are entitled to their healthcare benefits and the Debtors' obligations related thereto are included in the Interim Budget. Mot. ¶ 15 n.12, ECF No. 438 at 8.

[12]    The Lessors complain that the Court needs to balance the interests of the debtor-tenants with those of the commercial landlords during these unprecedented times. The Court recognizes that the Debtors have made herculean efforts to do just that. The reality presented by the Debtors' available scarce resources suggests that if the Court were to afford greater relief to one creditor constituency (such as landlords) it must necessarily require that another creditor constituency (such as furloughed employees) forgo the limited relief accorded them.

that must make concessions in order to benefit all.  Court approval of the Interim Budget was absolutely vital to enable the Debtors to maximize the value of their assets.

For the foregoing reasons, the Court found that the temporary relief sought in the Motion was in the best interest of the estates in these Bankruptcy Cases and entered the Supplemental Order in order to extend the relief provided by the Original Order through the Limited Operations Period.

Dated:    May 10, 2020            /s/ Kevin R. Huennekens
                                  UNITED STATES BANKRUPTCY JUDGE


                                  Entered on Docket:    May 10, 2020