IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re: | Chapter 11 |
|     PIER 1 IMPORTS, INC., *et al.*, | Case No. 20-30805-KRH |
|         Reorganized Debtors. | Jointly Administered |

### MEMORANDUM OPINION

This matter comes before the Court upon the *Motion for Relief from Order Granting Omnibus Objection* [ECF No. 1809] (the "Motion") filed by GDI Aventura Development, LLC ("GDI"), through counsel, and the *Reorganized Debtors' Objection to Motion for Relief from Order Granting Omnibus Objection* [ECF No. 1814] (the "Objection") filed by Pier 1 Imports, Inc. and its reorganized debtor affiliates[1] (each, a "Debtor" and, collectively, the "Debtors" for periods prior to the Effective Date, as such term is defined herein, or each, a "Reorganized Debtor" and, collectively, the "Reorganized Debtors" for periods after the Effective Date). The Court conducted a hearing on February 21, 2024 (the "Hearing"), to consider the Motion.

After considering the evidence, the arguments presented during the Hearing, the record in the above-captioned jointly administered bankruptcy cases, and applicable law, and for the reasons set forth below and stated on the record at the Hearing, this Memorandum Opinion sets forth the Court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[2] The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference

---

[1]  The Debtors in these chapter 11 cases, are set forth in the Court's *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* entered February 18, 2020. ECF No. 76.

[2]  Bankruptcy Rule 9014 makes Bankruptcy Rule 7052 applicable to this contested matter. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

1

from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.

The parties stipulated to the facts presented in this contested matter. *See* Stipulation of Facts, ECF No. 1813 [hereinafter Stipulation]. The uncontested facts are as follows. Prior to the filing of these jointly administered bankruptcy cases, one of the Debtors, Pier 1 Imports (U.S.), Inc., entered into a commercial lease agreement on or about February 26, 1999, with Henning/Trion Ventures I, Ltd., the predecessor-in-interest to GDI (the "Lease"). Stipulation ¶ 1, ECF No. 1813 at 1. Under the terms of the Lease, the Debtor agreed to pay monthly rent and other charges in exchange for the use of premises located in Aventura, Florida. *Id.*

On February 17, 2020 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). *Id.* ¶ 2, ECF No. 1813 at 2. The Court entered an order authorizing and directing Epiq Corporate Restructuring, LLC (the "Claims Agent") to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim in these bankruptcy cases. *Id.* ¶ 3, ECF No. 1813 at 2; Order (I) Approving Retention of Epiq Corp. Restructuring, LLC as Claims & Noticing Agent to Debtors, Effective Nunc Pro Tunc to Pet. Date & (II) Granting Related Relief, ECF No. 96. The Debtors were able to confirm a plan on July 30, 2020, *see* ECF No. 967, which became effective on October 9, 2020 (the "Effective Date"), ECF No. 1088. Stipulation ¶ 5, ECF No. 1813 at 3.

Post-confirmation, on September 4, 2020, the Debtors filed a *Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases* [ECF No. 1042], whereby the Debtors sought to reject the Lease as of September 25, 2020. *Id.* ¶ 7, ECF No. 1813 at 3. No objection was received

2

in connection therewith and the effective date of the rejection of the Lease was September 25, 2020. *Id.*

On October 23, 2020, GDI through its agent, Savitar Realty Advisors ("Savitar"), timely filed[3] a proof of claim (the "Claim") for a general unsecured claim in the amount of $461,698.96 for damages allegedly resulting from the rejection of the Lease. *Id* ¶ 8, ECF No. 1813 at 3. The Claim was signed by Clifford Stein ("Stein"), the President of Savitar, and further provided that all notices to GDI should be sent to GDI care of "Savitar Realty Advisors, 5345 Pine Tree Drive, Miami Beach, FL 33140" (the "Service Address"). *Id.* Ex. A, ECF No. 1813 at 9-10.

Between September 18, 2020, through January 14, 2021, Stein communicated with counsel for the Reorganized Debtors with respect to the Claim. *See id.* ¶ 10 & Ex. B, ECF No. 1813 at 4, 27-29. In January 2021, Stein requested counsel for the Reorganized Debtors provide a status update on the Claim. *Id*. Ex. B, ECF No. 1813 at 26. The Reorganized Debtors, by their plan administrator, stated via email that, "[m]ost of the claim you filed was unsecured for which *we expect* no distribution." *Id*. (emphasis added). Communications between the Reorganized Debtors and Stein then ceased.

---

[3] On March 13, 2020, the Court entered an *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, (IV) Approving Notice of Bar Dates, and (V) Granting Related Relief* [ECF No. 345] (the "Claims Bar Date Order"). Among other things, the Claims Bar Date Order set a deadline for the filing of proofs of claim based on damages incurred from the rejection of executory contracts and unexpired leases on the

> later of (i) the General Claims Bar Date [of April 17, 2020 at 4:00 p.m.] . . . and (ii) 4:00 p.m., prevailing Eastern time, on the date that is 30 days after the later of (A) entry of an order approving the rejection of any executory contract or unexpired lease of the Debtors or (B) the effective date of a rejection of any executory contract or unexpired lease of the Debtors pursuant to operation of any Court order.

Claims Bar Date Order ¶ 6, ECF No. 345 at 3-4.

Just over two years later, on April 25, 2023, the Reorganized Debtors filed the *Reorganized Debtors' Twentieth Omnibus Objection to Certain (A) No Liability Claims, (B) Duplicate Claims, (C) Insufficient Documentation Claims, (D) Late Filed Claims, (E) Amended Claims, (F) Reduced Claims, and (G) Satisfied Claims* [ECF No. 1553] (the "Claim Objection"), which sought to reduce the Claim to zero dollars. *Id.* ¶¶ 11-12, ECF No. 1813 at 4. The Claims Agent served the Claim Objection on GDI at the Service Address. Cert. of Serv., ECF No. 1554; Stipulation ¶ 13, ECF No. 1813 at 4. Neither GDI nor Savitar filed a response to the Claim Objection. Stipulation ¶ 14, ECF No. 1813 at 4. Accordingly, on June 22, 2023, the Court entered the *Order Granting Reorganized Debtors' Twentieth Omnibus Objection to Certain (A) No Liability Claims, (B) Duplicate Claims, (C) Insufficient Documentation Claims, (D) Late Filed Claims, (E) Amended Claims, (F) Reduced Claims, and (G) Satisfied Claims* [ECF No. 1585] (the "Order"), *id.* ¶ 15, ECF No. 1813 at 4, sustaining the Claim Objection and reducing the Claim to $0. The Claims Agent served a copy of the Order on GDI at the Service Address. Cert. of Serv., ECF No. 1590; Stipulation ¶ 16, ECF No. 1813 at 5. Prior to the filing of the instant Motion, neither GDI nor Savitar filed a response or motion in connection with the Order. Stipulation ¶ 17, ECF No. 1813 at 5.

On September 13, 2023, the Reorganized Debtors filed the *Notice of Allowed General Unsecured Claims* [ECF No. 1643] (the "Notice of Allowed Claims"). *Id.* ¶ 18, ECF No. 1813 at 5.[4] The Claims Agent served a customized version of the Notice of Allowed Claims,[5] as well as

---

[4]  The Notice of Allowed Claims not only provided claimants with notice of the allowed amount of their general unsecured claim, but it also offered claimants a 14-day opportunity to notify counsel for the Reorganized Debtors if they did not believe the amount of a Claimants' unsecured claim was accurately reflected prior to the commencement of any interim or final distributions by the Reorganized Debtors. Notice of Allowed Claims 3, ECF No. 1643 at 3.

[5]  The parties attached to the Stipulation as Exhibit C a copy of the customized version of Notice of Allowed Claims that was mailed to GDI on September 25, 2023. Stipulation Ex. C, ECF No. 1813 at 30-38.

4

a Resolved Claims Notice,[6] on GDI at the Service Address. *Id.* ¶¶ 19, 21, ECF No. 1813 at 5-6. The Resolved Claims Notice provided that the Claim had been adjusted in some fashion and to refer to the Notice of Allowed Claims to determine if any portion of the Claim was allowed. *Id.* Ex. D, ECF No. 1813 at 43. In turn, the customized version of the Notice of Allowed Claims provided that the Claim was allowed in the amount of $0.00. *Id.* Ex. C, ECF No. 1813 at 37.

Although the Claims Agent mailed via first-class mail, postage prepaid, (1) the Claim Objection; (2) the Order; (3) the Notice of Allowed Claims; and (4) the Resolved Claims Notice to GDI's Service Address as provided in the Claim, *see id.* ¶¶ 13, 16, 19, 21, ECF No. 1813 at 4, 5-6, GDI alleges Savitar did not receive any of the foregoing documents, *id.* ¶ 26, ECF No. 1813 at 6.

GDI alleges that on November 13, 2023, Stein received an email inquiry from an unrelated third party concerning the potential purchase of the Claim. Mot. Ex. C, ECF No. 1809-1 at 30. This prompted Stein to contact counsel for the Reorganized Debtors on November 14, 2023—thirty-fourth months since the prior email communication—for an update on any proposed distribution to general unsecured creditors. Stipulation Ex. E, ECF No. 1813 at 46. The Reorganized Debtors communicated that an interim distribution of 8-9% may be forthcoming to general unsecured creditors with a valid claim. *Id.*, ECF No. 1813 at 45. But because the GDI claim was reduced to zero dollars, there would be no distribution at all to GDI. *Id.*, ECF No. 1813 at 47. Starting on December 14, 2023, the Reorganized Debtors began the process of making interim distributions to holders of allowed general unsecured claims. *Id.* ¶ 25, ECF No. 1813 at 6.

---

[6] The parties attached to the Stipulation as Exhibit D a copy of the Resolved Claims Notice that was mailed to GDI on September 25, 2023. Stipulation Ex. D, ECF No. 1813 at 38-43.

On January 31, 2024, GDI filed the Motion. Until the filing of the Motion, neither Savitar, GDI, nor any party on their behalf filed a notice of appearance in connection with the above-referenced bankruptcy proceedings. *Id.* ¶ 27, ECF No. 1813 at 6. At no point prior to the filing of the Motion did Savitar, GDI, or any party on their behalf subscribe for free electronic docket alerts provided by the Claims Agent. *Id.* ¶ 28, ECF No. 1813 at 6.

GDI now seeks to vacate the Order as it pertains to the Claim and for leave to file a late response to the Claim Objection. "A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j); *see also* Fed. R. Bankr. P. 3008. "Reconsideration of a claim that has been previously allowed or disallowed after objection is discretionary with the court." Fed. R. Bankr. P. 3008 advisory committee's note.

"Reconsideration under 502(j) is a two-step process. First, a court must decide whether there is 'cause' for reconsideration. Then, the court must decide whether the 'equities of the case' dictate allowance or disallowance of the claim." *Dorula v. Flanders* (*In re Starlight Grp., LLC*), 515 B.R. 290, 293 (Bankr. E.D. Va. 2014) (quoting *Americredit Fin. Servs. v. Durham* (*In re Durham*), 329 B.R. 899, 903 (Bankr. M.D. Ga. 2005)). "The burden of establishing cause for reconsideration under 502(j) rests with the moving party." *Covert v. LVNV Funding, LLC*, 779 F.3d 242, 248 n.3 (4th Cir. 2015) (citing *In re Starlight Grp., LLC*, 515 B.R. at 293).

"Cause" is not defined by section 502(j) of the Bankruptcy Code. "In determining whether cause exists under Bankruptcy Rule 3008, courts look to [Bankruptcy Rules] 9023 and 9024 which incorporate [Civil Rules] 59 and 60." *In re Starlight Grp., LLC*, 515 B.R. at 293 (first citing *United States v. Levoy* (*In re Levoy*), 182 B.R. 827 (B.A.P. 9th Cir. 1995); then citing *Colley v. Nat'l Bank of Tex.* (*In re Colley*), 814 F.2d 1008, 1010 (5th Cir. 1987); then citing *Ark. Dep't of Labor v. W.F.*

6

*Hurley, Inc.* (*In re W. F. Hurley, Inc.*), 612 F.2d 392, 396 n.4 (8th Cir. 1980)). "When reconsideration under Rule 3008 is sought after the . . . appeal period has expired, the motion is subject to the constraints of [Civil Rule] 60(b) as incorporated by [Bankruptcy] Rule 9024." *Id.* (quoting *U.S. Funds, Inc. v. Wylie* (*In re Wylie*), 349 B.R. 204, 209 (B.A.P. 9th Cir. 2006)).

As the appeal period ran prior to the filing of the Motion, *see* Fed. R. Bankr. P. 8002(a), Civil Rule 60 applies in the case at bar. Under Civil Rule 60(b), as made applicable to this contested matter by Bankruptcy Rule 9024, a party may seek relief from a final judgment or order due to "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1); Fed. R. Bankr. P. 9024. Such a movant must show *both* that the party's failure to act was neglectful *and* that such neglect was excusable. "The burden of proving excusable neglect rests on the creditor." *Board v. AMF Bowling Worldwide, Inc.* (*In re AMF Bowling Worldwide, Inc.*), 520 B.R. 185, 195 (Bankr. E.D. Va. 2014) (citing *In re US Airways, Inc.*, No. 04-13819-SSM, 2005 WL 3676186, at *7, 2005 Bankr. LEXIS 2696, at *23 (Bankr. E.D. Va. Nov. 21, 2005)). Excusable neglect "is not easily demonstrated, nor was it intended to be." *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996). For the reasons outlined below, GDI has failed to carry its burden in this case.

**A.     GDI did not act neglectfully.**

The Bankruptcy Code does not define "excusable neglect." The Supreme Court has stated that the "ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or, . . . 'to leave undone or unattended to *esp[ecially] through carelessness*.' The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (citation omitted) (emphasis and alterations in original).

7

Rather than demonstrating neglect, the record shows that GDI intentionally withdrew its participation in these bankruptcy cases once it learned that the Reorganized Debtors did not anticipate a distribution to unsecured creditors. Stipulation Ex. B, ECF No. 1813 at 24-29. GDI was actively engaged with the Debtors and in frequent communications with the Debtors about the Lease and the Claim, until GDI learned that its Claim may not be paid. *Id.* At that point, GDI ceased communications with the Reorganized Debtors for almost three years. *Id.* Ex. E, ECF No. 1813 at 44-49. It was not until GDI learned through a third party that a distribution would be made to unsecured creditors that it recommenced such communication. Mot. ¶ 28, ECF No. 1809 at 6. GDI suggests that because its agent "was advised by estate professionals that no distribution to unsecured creditors was anticipated," its inaction is excusable. *Id.* ¶ 30, ECF No. 1809 at 6.

Although GDI had been actively engaged in these bankruptcy cases, the record shows that GDI made a conscious business decision that its continued participation no longer made economic sense based on the Reorganized Debtors' projections. The Reorganized Debtors performed better than they originally anticipated. While GDI may have made a different decision with the benefit of hindsight, it cannot avail itself of the benefit of a bargain it elected not to strike. *Cf. Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 454-55 (E.D. Va. 2009) ("'[T]he mere expression of an opinion, however strong and positive the language may be,' is not a statement of present fact. . . . They 'are merely loose, conjectural or exaggerated, [and] go for nothing, though they may not be true, for a man is not justified in placing reliance upon them.'" (alterations in original) (internal citations omitted)). GDI's intentional choice to "sit back and ignore the bankruptcy," *In re Quartercall Communs., Inc.*, No. 95-15090-AM, 1996 WL 910910, at *6, 1996 Bankr. LEXIS 2042, at *15 (Bankr. E.D. Va. May 15, 1996), does not constitute neglect and, as such, cannot constitute cause for reconsideration of the Order. *Jacobs v. Hudson Real Est. Holdings, LLC*, No.

8

20-CIV-80911-RAR, 2021 WL 705785, at *4, 2021 U.S. Dist. LEXIS 33184, at *10 (S.D. Fla. Feb. 23, 2021) ("Moreover, this proffered justification lends further support to the notion that Defendants' failure to comply was the result of an intentional act, which, as explained above, precludes relief under Rule 60(b).")

**B.    Even assuming there is neglect, GDI has failed to show *excusable* neglect.**

To succeed under Civil Rule 60(b), GDI must show both neglect and excuse. Even assuming GDI could show that its actions were neglectful (which it cannot), GDI cannot prove such neglect was excusable. To determine whether neglect is excusable, the Court must perform an equitable inquiry that "tak[es] account of all relevant circumstances surrounding the party's" failure to act timely. *Pioneer Inv. Servs. Co.*, 507 U.S. at 395. These "circumstances" include: "(1) whether granting the delay will prejudice the debtor; (2) the length of the delay and its impact on efficient court administration; (3) whether the delay was beyond the reasonable control of the person whose duty it was to perform; [and] (4) whether the creditor acted in good faith." *Id.* at 385, 396 (internal citations omitted).

Granting the Motion would prejudice the Reorganized Debtors and their creditors. The Order, among the many claim reconciliation orders entered in these bankruptcy cases, "allowed the Reorganized Debtors to accurately calculate their outstanding liabilities to creditors," *In re AMF Bowling Worldwide, Inc.*, 520 B.R. at 196 (internal citation omitted), so that they could fund an interim distribution to general unsecured creditors. If the Court were to allow GDI to file a late response to the Claim Objection, "it is difficult to see on what basis the court could deny the same relief to dozens or perhaps hundreds of creditors who might now come forward and assert a previously" time-barred defense. *See id.* (quoting *In re US Airways, Inc.*, 2005 WL 3676186, at *7, 2005 Bankr. LEXIS 2696, at *25). "Without the finality of those deadlines, the bankruptcy

9

process is robbed of the certainty the debtor needs." *Board v. AMF Bowling Worldwide, Inc.*, 533 B.R. 144, 148 (E.D. Va. 2015). Accordingly, the first factor weighs against granting the Motion.

The Court finds that the length of the delay and its impact on efficient court administration also weighs against granting the Motion. Nine months passed between the filing of the Claim Objection and the filing of the Motion. GDI had been given four opportunities to note is opposition. Three months passed between the time GDI admits to learning of a possible distribution to unsecured creditors and the filing of the Motion. The length of this delay "stands in stark contrast to cases where courts have found the length of delay to be acceptable." *In re AMF Bowling Worldwide, Inc.*, 520 B.R. at 197 (collecting cases).

If the Court were inclined to grant the Motion, "the administration of this bankruptcy would be delayed by several months, at minimum, to the detriment of all the other creditors." *Id.* at 196. The Reorganized Debtors have now issued an interim distribution that at one time seemed entirely unlikely. If the Court granted to GDI the requested relief, the Reorganized Debtors would have to completely recalculate the interim distribution already provided. This could prejudice those creditors with allowed claims who chose to continue their participation in these bankruptcy cases. At a minimum, it would cause the Reorganized Debtors to incur additional administrative expense and would delay any further interim or final distributions. In a case that is now over four years old, that would certainly hinder the efficient administration of the case.

The Court finds that the delay was well within GDI's reasonable control and, as such, that the third factor is not satisfied in the case at bar. The parties stipulated that the Reorganized Debtors mailed via first-class mail, postage prepaid, (i) the Claim Objection, (ii) the Order, (iii) the Notice of Allowed Claims, and (iv) the Resolved Claims Notice to GDI's Service Address. The parties do not contest that such service is sufficient under the Bankruptcy Rules. Fed. R. Bankr.

10

P. 3007(a)(2)(A). Instead, GDI asserts that it did not receive any of these four mailings. Although the parties have stipulated that each mailing occurred, GDI denies receiving copies of the Claim Objection, the Order, the Notice of Allowed Claims, or the Resolved Claims Notice. Stipulation ¶ 26, ECF No. 1813 at 6.

"Service of process and service of any paper other than process or of notice by mail is complete on mailing." Fed. R. Bankr. P. 9006(e). "When there is a right or requirement to act or undertake some proceedings within a proscribed period after being served and that service a is by mail… three days are added after the prescribed period would otherwise expire under Rule 9006(a)." *Id.* 9006(f).[7] "Upon proof that mail is properly addressed, stamped and deposited in an appropriate receptacle, it is presumed to have been received by the addressee in the ordinary course of the mails. Moreover, testimony that amounts to a mere denial that a properly mailed notice was not received is arguably insufficient to rebut the presumption of receipt." *In re Birdneck Apartment Assocs., II, L.P.*, 152 B.R. 65, 67 n.5 (Bankr. E.D. Va. 1993) (citations omitted).

GDI failed to present evidence of any standardized practice for receiving and processing mail, let alone evidence sufficient to rebut the presumption. *See In re Taylor*, Case No. 97-27032-SCS, 1998 Bankr. LEXIS 1791 (Bankr. E.D. Va. Dec. 16, 1998); *In re Cassell*, 206 B.R. 853 (Bankr. W.D. Va. 1997); *see also In re Rayborn*, 307 B.R. 710, 722 (Bankr. S.D. Ala. 2002) ("A creditor's 'denial of receipt alone does not rebut the presumption, but merely creates a question of fact' for resolution by the bankruptcy court. 'The presumption can only be overcome by clear and convincing evidence that the mailing was not, in fact, accomplished.'" (first quoting *In re*

---

[7] Bankruptcy Rule 9006(f) is waived in these bankruptcy cases only where the "document is served by electronic or overnight mail." Order (I) Establishing Certain Notice, Case Mgmt., & Admin. Proc. & (II) Granting Related Relief ¶ 13, ECF No. 151 at 14. The parties stipulated that the documents were served via first class mail. Stipulation ¶¶ 13, 16, 19, 21, ECF No. 1813 at 4, 5-6.

*Longardner & Assocs., Inc.*, 855 F.2d 455, 459 (7th Cir. 1988); then citing *In re STN Enters., Inc.*, 94 B.R. 329, 334-35 (Bankr. D. Vt. 1988); then quoting *In re Levoy*, 182 B.R. at 834). GDI's bald assertion that it did not receive the documents does not justify its delay.

Furthermore, GDI had other options for it to receive notices. GDI could have elected to receive free electronic notifications in these bankruptcy cases. The Claims Agent hosts a website[8] with free access to the complete docket and claims register, an extensive overview of the case, and a cache of important documents organized by topic. In white lettering with a conspicuous orange border, the website provides the ability to subscribe to docket alerts. During the Hearing, GDI argued that, with over 1800 documents filed in this case, receiving an email notification for each new document would be cumbersome. Again, as was its prerogative, GDI made the determination that reviewing free email alerts on docket filings was too great a burden to protect recovery on its Claim.

Alternatively, GDI could have hired counsel to monitor the docket for activity concerning its Claim. *See* LBR 9010-1 (a party may appear on the record only through counsel). Although this would have required GDI to incur legal expense to engage counsel, GDI made the decision that pursuing this avenue was not worthwhile. In light of the foregoing, the Court finds that the delay was entirely within GDI's control and, as such, the third factor is not satisfied.

Finally, the parties did not provide evidence addressing the good faith standard set forth in *Pioneer*. While the Court does not find that GDI proceeded in bad faith, GDI did not meet its burden on this element, as it simply offered no evidence of its good faith. Nevertheless, GDI "has failed to satisfy any of the other three factors set forth in *Pioneer*." *In re AMF Bowling Worldwide,*

---

[8] The website may be found at https://dm.epiq11.com/case/pier1/info.

*Inc.*, 520 B.R. at 197. For these reasons, GDI has not met its burden of proving excusable neglect and the Motion must be denied.

**C.    The Reorganized Debtors had a bona fide objection to the GDI claim.**

"While Rule 3008 permits an order disallowing a claim to be reconsidered, the merits of the claim objection are no longer fair game unless the claimant first establishes a good excuse, cognizable under FRCP 60(b), for its failure to timely contest the objection." *In re Starlight Grp., LLC*, 515 B.R. at 294. As GDI failed to meet the standard of Civil Rule 60, the Court need not address the merits of the Claim Objection. However, to the extent the merits can be an independent factor for the "equities of the case," the Court finds that the Motion still fails. *See id.* at 293 (once the court has found cause – not present in the case at bar – the court must then "decide whether the 'equities of the case' dictate allowance or disallowance of the claim" (quoting *In re Durham*, 329 B.R. at 903)).

Under the Bankruptcy Code, a proof of claim is deemed allowed unless a party in interest, such as the debtor, objects. 11 U.S.C. § 502(a). "Once the objector produces" "evidence equal in probative force to the proof of claim," the burden shifts to the claimant to prove the claim's validity. *In re Merry-Go-Round Enters.*, 241 B.R. 124, 134 (Bankr. D. Md. 1999).

The Claim arose from the rejection of the Lease and consisted of alleged *projected* "monthly base rent and related expenses owed to GDI pursuant to the Lease, and in accordance with the one-year statutory cap" of section 502(b)(6) of the Bankruptcy Code. Mot. Ex. 1 ¶ 5, ECF No. 1809-1 at 3. At the time the Claim was filed, the amounts included in the Claim were all future forecasts. Stipulation ¶ 8 & Ex. A, ECF No. 1813 at 3, 8-12.

The Reorganized Debtors objected to the Claim on the grounds that, "[b]ased upon the Debtors' books and records, the amount asserted exceeds the amount reflected as due and owing

13

and/or the claimant has failed to sufficiently mitigate its damages." Claim Obj. sch. 6, ECF No. 1553 at 64.  GDI admits that the amount of the Claim may have been incorrect.  Mot. ¶ 34, ECF No. 1809 at 7 ("GDI is a landlord creditor, whose lease was rejected by the Debtors, and which holds a valid claim for some amount of lease rejection damages for fixed monthly rents and other charges.  While the Reorganized Debtors may have defenses to the precise amount of the claim, most of the claim consisted of liquidated amounts not subject to dispute." (emphasis omitted)).

The Reorganized Debtors do not bear the burden of estimating GDI's Claim.  Instead, upon the filing of the Claim Objection, the burden properly shifted to GDI to establish the validity and amount of its Claim.  GDI failed to meet this burden.  By its inaction, GDI failed to establish that it had a bona fide claim.

## Conclusion

GDI has failed to prove the elements necessary for reconsideration under section 502(j) of the Bankruptcy Code.  GDI deliberately disengaged from participating in these bankruptcy cases.  While its decision may have been unwise, such conduct does not constitute excusable neglect under Civil Rule 60(b) or otherwise amount to cause under section 502(j) of the Bankruptcy Code.  Accordingly, the Motion is DENIED.

A separate Order shall issue.

Dated:  March 11, 2024                    /s/ Kevin R. Huennekens
                                          UNITED STATES BANKRUPTCY JUDGE

                                          Entered on Docket: March 11, 2024

14